OF THE
STATE OF DELAWARE

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: August 8, 2025
Date Decided: August 28, 2025

Peter B. Ladig, Esquire
Emily L. Skaug, Esquire
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801

Marc S. Casarino, Esquire
Katie Barksdale, Esquire
KENNEDYS CMK LLP
222 Delaware Avenue, Suite 710
Wilmington, DE 19801

> RE:   *Minnie Sarwal v. Nephrosant, Inc.*,
>        C.A. No. 2023-0222-BWD

Dear Counsel:

This letter opinion resolves counterclaim-defendant Minnie Sarwal's motion to dismiss Count III of counterclaim-plaintiff Nephrosant, Inc.'s ("Nephrosant") Verified Counterclaims (the "Counterclaims").

In this action, Sarwal seeks advancement and indemnification from Nephrosant, a Delaware corporation headquartered in California that Sarwal founded "to develop and monetize . . . a non-invasive urine test to identify the risk of transplant rejection commercially known as QSant." Verified Compl. ¶ 3, Dkt. 1. Sarwal alleges that Nephrosant "steadily achieved success" under her leadership, until investors with representation on the company's board of directors ousted her under the "artifice" of an internal investigation undertaken to "justify freezing

[Sarwal] out" of the company. *Id.* ¶¶ 1, 8. In early 2022, the board removed Sarwal as CEO and appointed non-party Mark Capone as Nephrosant's new CEO, then established a committee of directors (the "Special Committee") to investigate "complaints from unnamed employees" about assays used in the company's QSant product. *Id.* ¶¶ 12–13, 15. The Special Committee directed Sarwal to remain home during the investigation. *Id.* ¶ 17. After the investigation, Capone placed Sarwal on administrative leave and suspended her access to the company's servers and email. *Id.* ¶ 20. Sarwal asserts that she "cooperat[ed] fully with" the investigation, which "found no wrongdoing by her," and is entitled to indemnification of fees and expenses incurred in responding to the investigation. *Id.* ¶¶ 22, 25, 28.

Nephrosant denies that Sarwal is entitled to advancement or indemnification in connection with the investigation. In its Counterclaims, Nephrosant alleges that when Sarwal was asked to provide documents during the Special Committee's investigation, she used an email account associated with the University of California, San Francisco School of Medicine to access, download, and delete tens of thousands of confidential company documents stored in a Box account. Def. Nephrosant, Inc.'s Answer and Verified Countercls. to Pl.'s Verified Compl. [hereinafter Countercls.] ¶¶ 26–27, 34, Dkt. 9. Count III of the Counterclaims asserts a statutory tort claim against Sarwal under the Delaware Computer Related Offenses Act, 11 *Del. C.*

§§ 931–941 (the "Act"), which criminalizes certain computer-related conduct and

creates a private cause of action for individuals aggrieved by such conduct.[1]

Sarwal has moved to dismiss Count III of the Counterclaims for failure to state

a claim under Court of Chancery Rule 12(b)(6). When reviewing a motion to dismiss

under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations

as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing

party notice of the claim, [and] (3) draw all reasonable inferences in favor of the

non-moving party . . . ." *Central Mortg. Co. v. Morgan Stanley Mortg. Capital

Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812

A.2d 894, 896–97 (Del. 2002)).

Sarwal contends that Count III must be dismissed because it is not reasonably

conceivable that the Act could govern Nephrosant's computer-related claims. I

agree. Although Nephrosant has attempted to sue under the Act, that statute lacks

---

[1] Section 941 provides, in relevant part, that "any person who suffers any injury to person, business or property may bring an action for damages against a person who is alleged to have violated any provision of §§ 932–938 of this title," regardless of whether the State has filed criminal charges against that person for the alleged computer crime. 11 *Del. C.* § 941(c). Sections 932 through 938 identify several computer-related offenses, including "theft of computer services" (Section 933), "interruption of computer services" (Section 934), and "misuse of computer system information" (Section 935). *Id.* §§ 932–938. Section 940 establishes proper venue. *Id.* § 940.

extraterritorial effect. Title 11, Section 204(a) of the Delaware Code addresses the

territorial applicability of the Act:

> Except as otherwise provided in this section a person may be convicted under the law of this State of an offense committed by the person's own conduct or by the conduct of another for which the person is legally accountable if:
>
> > (1) Either the conduct or the result which is an element of the offense occurs within Delaware; or
> >
> > (2) Conduct occurring outside the State is sufficient under Delaware law to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of the conspiracy occurs within the State; or
> >
> > (3) Conduct occurring within the State establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of Delaware; or
> >
> > (4) The offense consists of the omission to perform a legal duty imposed by Delaware law with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or
> >
> > (5) The offense is based on a statute of Delaware which expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the defendant knows or should know that the defendant's conduct is likely to affect that interest.

11 *Del. C.* § 204(a).

The Counterclaims do not allege that any conduct or result took place in

Delaware. Instead, the Counterclaims allege that Sarwal, while located in

California, accessed and deleted company files using IP addresses associated with the University of California, San Francisco. Countercls. ¶¶ 26–27, 34. The Counterclaims likewise do not allege that the computer systems at issue were located in Delaware. Nephrosant argues that the Act nevertheless applies because Sarwal "intentionally accessed and deleted [the] proprietary information" of a Delaware corporation.[2] Def. Countercl. Pl. Nephrosant, Inc.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss Count III of the Countercls. [hereinafter AB] at 3, Dkt. 120. But Nephrosant "has not cited, and research has not revealed, any decision that uses the state of incorporation of the plaintiff as a controlling, predominant, or even weighty factor when determining what law governs a claim for" computer-related offenses. *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020) (holding it was not reasonably conceivable that the Delaware Uniform Trade Secrets Act applied to a claim for misappropriation of trade secrets where the plaintiff did not "cite[] any conduct that took place in Delaware"); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *19 (Del. Ch. Dec. 1, 2009) (holding the

---

[2] Much of Nephrosant's briefing addresses personal jurisdiction over Sarwal. Those arguments miss the mark. Sarwal does not contend that the Court lacks personal jurisdiction over her; rather, she argues that Count III does not state a reasonably conceivable claim under the Act because the Act does not apply to conduct that exclusively occurred outside of Delaware.

Delaware Securities Act did not apply where there was not "a sufficient nexus between Delaware and the transaction" as "the only Delaware connection in th[e] matter [wa]s the Delaware organization of [the company]").

Nephrosant also argues that Section 204(a)(5) "allows for extraterritorial application when the conduct bears a reasonable relation to Delaware's legitimate interests." AB at 7. In fact, Section 204(a)(5) provides that a person may be convicted under the Act if "[*t*]*he offense is based on a statute of Delaware which expressly prohibits conduct outside the State*, when the conduct bears a reasonable relation to a legitimate interest of this State and the defendant knows or should know that the defendant's conduct is likely to affect that interest." 11 *Del. C.* § 204(a)(5) (emphasis added). Sections 933, 934, and 935 of the Act do not expressly prohibit conduct outside the State.[3] Section 204(a)(5) therefore does not apply.

---

[3] Notably, Section 940(a) provides that "[i]n any prosecution for any violation of §§ 932–938 of this title, the offense shall be deemed to have been committed in the place at which the act occurred or in which the computer system or part thereof involved in the violation was located[,]" and Section 940(c) states that "[i]f any act performed in furtherance of the offenses set out in §§ 932–938 of this title occurs in this State or if any computer system or part thereof accessed in violation of §§ 932–936 of this title is located in this State, the offense shall be deemed to have occurred in this State." 11 *Del. C.* §§ 940(a), (c). Again, the Counterclaims do not allege that the computer systems involved in the violations were located in Delaware or that any act in furtherance of the violations occurred in Delaware.

Because the Counterclaims fail to state a reasonably conceivable claim under the Act, the Motion is GRANTED and Count III is DISMISSED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)